I would like to reserve a couple minutes for rebuttal if I may. This case presents one issue, and that is the imposition of a condition of supervised release requiring the ingestion of psychotropic medication by a person convicted and released after they've served their sentence for making a threat. It's our position that we took in the district court and on this appeal that there is a constitutional right recognized by the U.S. Supreme Court, substantive due process right, to refuse this sort of invasive treatment that puts this case in a different posture than the court would normally be in assessing it. If the choice, is there a choice for the person on supervised release to either take the psychotropic drug or go to an institution where they lock him up because he's dangerous? If he has the choice, he would probably take the drug, wouldn't he? I don't know. Are you claiming that he was coerced into taking this drug because the alternative would be to go to the state hospital or someplace and just be out of circulation? Because if there's an implicit finding of dangerousness, that was the reason for the condition of supervised release. I think the problem with the case is that there was no finding of dangerousness. Well, is that implicit in the judge's analysis of the problem? We can guess at what her reasons were, but she was using a rational relationship test, which is a very low standard, and saying, I think this will basically help you comply with conditions of supervised release. Well, he was already a probation violator when he started harassing this person in the charged event. He was already a probation violator from a state case, wasn't he? He was on state probation at the time. That's right. And his behavior certainly had some elements of danger to the victim and to society. If he's that paranoid and he's offering to kill the teacher, why isn't the finding of dangerousness implicit in the judge's decision to take something in control of his mental illness? Well, the threat in this case happened approximately two and a half years before the sentencing proceeding, and a lot happened after that. He was held in custody during that period of time. He only took medication for a very small portion of that time under a court order for about two months, whereupon he was returned to confidence, and then voluntarily after that. And that order wasn't based on dangerousness either, was it? No, it was not based on dangerousness. It was based on basically what we see now from the cell opinion from the U.S. Supreme Court, but is already very similar to the law instituted after Harper and Riggins, and that is that when there's an overriding very important governmental interest, you can overcome the liberty interest that a person has not to have this sort of invasive treatment. Now, I'm not arguing, Your Honor, that it may not be a good idea for him to take the medication. That's not our position. Our position is that because of the invasive nature of this recognized by our Supreme Court, there's a special finding and special procedures that have to be in place. I understand you're not arguing either that he wouldn't – it isn't possible that after another set of procedures he wouldn't be subject to this drug. He couldn't be. You're arguing that there had to be a dangerousness finding, there had to be procedures to review the medical determination that he needs the medication and so on, but not that ultimately there couldn't be such an order necessarily. That's correct. And, in fact, I point out – I point it out of sentencing. I point out under the statute, 3583, there are means to get this back in front of the court. If it looks like without medication, he, in fact, is decompensating and is going to be dangerous. But that was done. Well, if he started writing more letters like the one that got him in trouble. Yes, but for two and a half years he didn't. He recognized the error of his ways. He apologized to the court. He apologized to the teachers. He wrote a letter that was accepted by the court, shown to the government, and sent on to the teachers and said, I did this for reasons because I had these beliefs. I recognize that I shouldn't have done it and I'm not going to do it anymore. And that was his posture. Let me ask you a very specific question, if I can understand exactly what your argument is. Suppose we were to vacate this order and send it back to Judge Brown and she were to hold a hearing now to determine whether he was now dangerous and under a prescription properly reviewed. So if so, she could now issue such an order, right? She wouldn't have to wait for him to not take his medicine. I think that she could issue such an order if you had the proper procedures in effect. And that would include, according to the Supreme Court case law, independent medical review with peer review. That's what was approved in the Washington v. Harper case. Not just the parole agent, as in Fels versus Fielder, and in this case a probation officer making the decision based on whether a doctor prescribes the medication. But she wouldn't have to wait for him to write another threatening letter, nor would she have to wait for him to not take medicine that had been prescribed, necessarily. No, I think if there were, I don't think there are grounds to do that at this point. But if there were an independent medical, if the government could present evidence that he is a current danger without medication, then I think that can be done. And it could be done under civil commitment law. It could be done in a lot of different ways, as Justice Breyer points out himself. Another thing we don't know, actually, is whether he is civilly committable at this point. Presumably he isn't, but we don't know that he is. I mean, in terms of, I guess, one of my colleagues was asking, well, couldn't this be conditional, either this week or an institution? But then he'd have to actually be committable, and that determination hasn't been made either. That's correct. It hasn't been made. And that is another possible alternative. So, again, from my experience and from the record we have here, I don't think that is the situation at this time, that he appears stable. And as the Court found at the actual sentencing, there was no intent to carry out these threats. I'm not saying that it's a good thing to do. It's a serious crime. But he did not receive the guideline increases for any behavior or intent to carry out the threats. So they were threats. They shouldn't have been made. And he recognized his mistake. And whether he chooses to continue with psychotropic medication over a long three-year period of time is really different than what the courts looked at in temporarily making somebody competent over a few months. Because side effects can take much more serious disorder. If he were to prevail, would the proper action be to remand it to the district court to reevaluate the sentence? You see, he could serve five years. And maybe the reason why the 15 months' time served plus the supervised release was part of the consideration of the judge. I wonder if then the judge would not be able to reconsider the sentence. I don't think that the government has appealed the length of the sentence. I really don't think that that would be an issue on remand. No, it's not length. But if it were sent back to the district court, couldn't the district court say, Well, if our holding is that this is improper to provide that as a condition of the supervised release, then I would reevaluate the sentence in the sentence of five years that he could be sentenced to. Well, I don't think the court would have any authority to do that unless this court specifically gave it that authority in the remand. I mean, it's just not an issue in the appeal. Because that that was the basis of her sentence, 15 months' time served and the supervised release in which you take the drugs. Her sentence of the 15 months was not, as I see it, based on him taking the drugs. It was the sentence imposed for the offense as calculated under the guidelines, with recommendations from both parties and the probation office considered. The condition of supervision was a separate issue. Again, this Court can do what it chooses, but I don't think that would be proper under these certain standards. One question is, the Supreme Court cases, the trilogy of cases about forced administration of drugs, as I understand it, was it about forced administration, i.e., giving somebody an injection or pouring drugs down his throat rather than having him do it under order rather than voluntarily? Yes, well, of course, an order to take medication. All right, and here there isn't such order, right? No one is saying that they're going to pour pills down his throat. They're essentially saying, as I understand it, this is a condition of probation. If you don't do it, you may go back to jail for not pouring any drugs down your throat. Does that make a difference? Well, his alternative is to violate supervised release, so we're challenging the legality of that order. I understand you, but I'm wondering if there's a difference in an order that says you are ordered to take the drugs. You are ordered to yourself take the drugs. And a rule, and what I think, in at least two of the cases, the third may be different, where what they were talking about when they were talking about forced administration of drugs was literally forced administration of drugs. I think that's available in the hospital context that those people were in, and there's no methodology, I guess, for the probation officer. Well, it just isn't being done. But in terms of the substitute process terms, is there a difference between telling somebody you must take a drug and literally forcing it down their throat? Does that matter? I don't think there really is if the consequence is the loss of your liberty. The Felser v. Fielder case, while it's not a Supreme Court case, is the only case to interpret the law in this context, the person being released on parole after serving time. And in that case, it was basically like this. Is this an interpretation? Yes. It's out of Wisconsin law, and the person was ordered to take medication as a condition of their parole. That was determined by the parole agent and a formerly treated physician, and it failed the due process test under Harper. Okay. Your time is up. Excuse me. One last question. Is the case ripe? He hasn't been forced to do it yet. Nobody has prescribed it yet. There's no indication that this may ever happen? Yes. I believe it is ripe. I know the government makes that presentation, and it's brief. I reply to it. In the reply brief, this is the place to appeal a condition that is illegal. If we don't appeal it, I believe it's waived, and I cite a case to you that this Court has held that. So I think it has to be raised now. The fact that it may not happen doesn't prevent the constitutional problems that we're pointing out, and that is that it is the probation officer who is deciding based on one doctor's prescription, without any of the findings of dangerousness or overriding government interests that have to be there before that's made. And the fact that he can have a later court hearing where he's being revoked and the Court decides whether or not, you know, how long to revoke him or whether to revoke him, that is not a remedy. And the Fels versus Fielder decision deals with that at length. I'd recommend that decision for your review. Thank you. We'll give you a minute to talk about that. Mr. Newman. Thank you, Mr. Jacobson. Your Honors. I think the Court correctly observed there are really three cases, the trilogy of cases decided by the Supreme Court, Harper-Riggins and the Fels case, that both Mr. Jacobson and I have called to the Court's attention. None of those three cases really resolves the specific question now before this Court. But I think there is some language in Fels that suggests that this issue probably is right for review. So, in part, I want to maybe back away from that argument a little bit, but I think the analysis of rightness in the Fels analysis is still appropriate to resolution of this issue. And I think it's appropriate in this manner. I don't think that this Court would be prepared to rule that under no circumstances is an order requiring antipsychotic medication appropriate. And I don't understand that we're being asked to. No, you're not being asked to. So the question then becomes under what circumstances is it appropriate and how is this Court going to review those kind of orders of the district court? And here, first of all, in analyzing the medication issue, Judge Brown did note that the defendant, and this is at page 31 of the excerpt of record and I believe page 10 of the judge's transcript, that in a person who has a delusional mental illness that is untreated, I think it is a serious threat in the sense that the defendant, meaning, of course, Mr. Williams, is not able to control his conduct while delusional. And then she went on to say, in my view of the facts, his particular mental illness, and there's a good history of that in the precedence report and the other information that Judge Brown had available to her. But, for example, I mean, people's mental situation changes. Of course it does. Suppose a year and a half from now, Mr. Williams should be suffering from depression and he should have a doctor administer depression medicine having nothing to do with this. This order would require him to take it. Would it not? I think that probably it would. And that was the point I was trying to make, Your Honor. She goes on to say the risk he can pose is much greater when unmedicated than when he is medicated. So she clearly had that in mind. The problem of review at this point is that I believe what the court can review is whether or not the district court has authority to enter an order requiring a defendant to take medication which is medically appropriate, which was the language of her opinion, and then to condition that further by saying, which you will recall from the transcript she did very directly to Mr. Williams, that if you do not do these things, it's not that somebody is going to come rushing out with a needle and jam it in your arm or force it down your throat. If you do not do these things that are medically appropriate, you will be back before this court for a show of cause hearing. And I think the significance of that is that the less intrusive language in the cases and so forth is something that this court really can't yet look at. In other words, I believe that Your Honors could find that thus far what the trial court has done is perfectly appropriate. We have a person here. There's no question that at least at times he has been dangerous, and a finding by the court that the medication helps that. For her to say, if you're going to be out in the community on supervised release, I'm going to include a condition that will require you to take medication if it is medically appropriate. Now, whether, and if I can use the court's hypothetical, lots of things might happen out there someday with Mr. Williams. Hopefully they won't. Hopefully he'll be just fine. But his history is that he hasn't always been fine. Now, he could, if I might, for example, be living in a halfway house situation or another spot and become angry about his breakfast and say that I don't like the way you buttered my toast. And maybe it would be appropriate if he continued that for a supervising probation officer. You know, you really have to behave differently, treat people with more respect. Or he might grab a knife and start running around threatening people, in which case some antipsychotic medication might be appropriate. Or he might become depressed, and that might cause him to become dangerous. I don't have the answers to those questions. They might become depressed and not be dangerous. That's absolutely correct. So is your argument that the whole dangerousness concern that the Supreme Court case has evidenced is just not relevant as a probation, as a supervised release condition, that the judge can set these conditions because they might be good for him even if he isn't dangerous? No. I think there was a lot of evidence in this case. Well, he was dangerous. Yes. There was no evidence that at the time she was putting this order into effect that he had any mental circumstances as to which made him dangerous or that he was going to in the future. I'm sorry. I don't think. There was evidence. First of all, the commitment was not for dangerousness, and the findings that were made by the doctor with regard at the time he was committed didn't really relate to dangerousness. It related to competence. Well, it related to competence, but I think that the court correctly concluded the potential for dangerousness when he becomes delusional is present and that that can be controlled by medication. What the court couldn't foresee, and none of us, I think, can foresee, is what is Mr. Williams' future. We can't see into the future, and therefore all that Judge Brown could do, and I think did do, is to say if there is a problem out there and if medically appropriate. My point is that there are millions of people walking around the United States making choices about whether to take psychotropic medication for reasons having nothing to do with dangerousness or criminal behavior. I'm sure that's probably the case. Hundreds, tens of them. I'm sure that's probably the case. And the order doesn't have anything to do with dangerousness. It doesn't say if you're prescribed medication because you're dangerous, you have to take it. It just says if you're prescribed medication, you have to take it. That's correct. So if he is prescribed medication because his doctor, for reasons having nothing to do with dangerousness, because he happens to be on supervised parole, he has to take it. That's correct. So my question is where does she get that authority? She gets that authority, Your Honor, from all of the information that she had available to her indicating that this defendant has a long, long history of mental illness. And as a sentencing judge, a person with the responsibility of putting him back into the community, and under the statutes that reside in the government's brief, she has the authority to fashion conditions that will keep the public safe and that also are, I think, in the best interest of Mr. Williams. It is not in his interest to become delusional and to believe that he can threaten people and to wind up back in a situation where he's charged with crimes again. Does the record reflect whether he was taking the medication while he was in the 15 months that he was in the hospital? I think the record does reflect that, Your Honor, yes. And Mr. Jacobson will correct me if I'm not correct. Yes, he was. The court may recall that there was the early order requiring him to take the medication and the issue of forcible medication during his stay in the hospital. And then Mr. Williams, while the motions were pending before Judge Brown, going to that early forced medication, decided to voluntarily take his medication. And I believe that continued. And I believe that was still continued at the time of sentencing. And I think the position of Mr. Jacobson and the defendant was that he might well continue to take it, but what he was objecting to was the order which forced him to take it. And I'm suggesting to the court that the ripeness issue here is that I think this court can analyze what Judge Brown did and say thus far what the court has done is completely appropriate, which is to order medication if medically appropriate. And I think Harper would approve of that. And I would note in passing, Harper did not include the type of judicial hearing that this defendant will have. Harper was strictly at an administrative hearing, and the forcible medication was approved here. There's no question if taking the example of becoming delusional or depressed, if at some future point Mr. Williams decides he is – well, first of all, if the order is triggered by the supervising probation and parole authorities determining that he needs medication, and if – How do we know that? Well, because that's the order, Your Honor, if medically approved. That's the written order? Yes. But I thought the oral order doesn't say anything about – it just says that the doctor prescribes it, no? Well, I don't have time right now to review the whole record, but I think it would also be conditioned on the probation officer initiating that kind of medication. And certainly it's conditioned on it being medically approved by a doctor. Another question here is how would they know if he was violating the order without being quite intrusive? Well, good question, and the record doesn't really support that. I would assume that as long as the behavior or the conduct of Mr. Williams is appropriate, that wouldn't become a question. But I assume that – I mean, they're allowed to inquire into whether he's fulfilling his conditions, and if it was prescribed, then I would assume that the probation officer could monitor him for whether he's taking his medicine. I assume they would monitor – I guess you could ask him. You could ask him. Certainly could ask. And then I suppose if he said, yes, I'm taking it, but he was acting delusional, there would have to be some further intervention by medical personnel to determine whether, in fact, he was taking it. I mean, that's commonly done with a few analyses and saliva and that sort of test in other contexts. Or who's your doctor and whether the doctor had prescribed it. Well, I think all of those things are possibilities, and one possibility is for sure I'm running out of time. You are out of time, in fact. If there are no further questions, we'll retreat. Thank you. I'll give you one minute in rebuttal. Thank you. On the factual question that you asked, Judge, he – under the involuntary medication order at the hospital, instead of having it injected forcibly, he said, I don't want to put anybody in that trouble. If you have this order in effect, I will take it orally. And he did that for about two to three months, after which they said he was competent and he was no longer under the order. For the next four months, while he was back in Portland awaiting trial, with no involuntary medication order in effect, he voluntarily continued with his medication, making the choice himself. And that's what we were asking the court to allow to continue at the time of sentencing. So he can have his constitutional right to be free from these things if and when he feels that it's either no longer necessary or it's having the untoward side effects that our Supreme Court has warned us about. What are we at the municipal condition of probation, on the current record, to say that he needs to report whether he has a prescription for a psychotropic medication and whether he's taking it? I'm sorry. In other words, if we were to vacate the mandatory order that he take it, if prescribed, could the judge substitute an order that says you need to tell your probation officer if you are prescribed such medication and if you are taking it? Certainly, the court could order that. They can monitor his mental health. In fact, there was a condition that we did not object to, that he undergo mental health evaluation and counseling, and that he's doing that, and we didn't object to that. It's only the invasive nature of this treatment, the way it affects thinking, and the person that puts it on a special claim. So if he were to report that he was under prescription and he wasn't taking it, at that point somebody could trigger, if they thought there was a problem, presumably, could trigger a hearing. Yes. Doctors prescribe things without saying you must take them. The fact that somebody will prescribe something that may be helpful does not mean that a person, by law, has to take them. If there is the governmental interest there to force it, then that could become right in the future. Okay. Thank you very much. Thank you. Thank you both for your arguments. They were very helpful. The case of United States v. Williams is submitted, and we will take it 15 minutes. Thank you very much.
judges: Goodwin, Hug, Berzon